IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILSON LEE CLOW, JR.,

    Defendant.

No. 6:12-cr-00638-AA
No. 6:18-cv-01985-AA

**OPINION & ORDER**

AIKEN, District Judge.

The matter comes before the Court on Defendant Wilson Lee Clow's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 163. For the reasons set forth below, Defendant's motion is DENIED. Because the motion and record conclusively show that Defendant is entitled to no relief, no evidentiary hearing is required. The Court declines to issue a certificate of appealability.

## BACKGROUND

Clow and his wife were the owners and operators of 2nd Amendment Guns, LLC, which was a gun dealer and FFL in Grants Pass, Oregon. In 2012, Clow's business was investigated by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). In the course of that investigation, ATF sent a confidential informant, who was a convicted felon, to purchase guns from Clow. The confidential informant told Clow that he was a felon and unable to legally purchase firearms.

In addition to the confidential informant, an undercover ATF agent was sent to purchase guns from Clow, posing as a relative of the confidential informant. The agent told Clow that he was buying the firearms for someone else as a straw purchaser.

Clow sold firearms to both the confidential informant and the undercover ATF agent; assisted them in fraudulently filling out the background check forms; and made false statements in the A&D Book. The ATF captured the unlawful sales, along with incriminating statements made by Clow, on both audio and video recordings.

In August 2012, law enforcement obtained and executed a federal search warrant for both Clow's business and his residence, which was located on the same property. During the search, Clow was advised of his *Miranda* rights and agreed to be interviewed by law enforcement. During the interview, Clow confessed and admitted that he had sold firearms to an individual he knew to be a felon.

On December 12, 2012, Clow was federally indicted for selling firearms to a prohibited person and making false statements on the ATF forms and the R&D Book. ECF No. 1. Attorney Shaun McCrea was appointed to represent Clow.

On January 11, 2016, Clow moved to suppress his confession and other statements made to law enforcement during the execution of the search warrant. ECF No. 47. Following a hearing, the Court denied the motion to suppress, finding that the statements were voluntary and admissible. ECF Nos. 53, 56.

A jury trial was held in Medford on June 27, 28, and 29, 2016, during which Clow testified in his own defense. Clow argued that he had been entrapped by the ATF. Clow also argued that he had been aware that the confidential informant was working for the ATF and that he had sold

the firearms to the informant and the agent in an effort to expose the ATF and engage them in a conversation about what Clow believed to be harassment.

On June 29, 2016, Clow was convicted of three counts of Selling a Firearm to a Prohibited Person in violation of 18 U.S.C. § 922(d) and two counts of False Statement During Sale of Firearm in violation of 18 U.S.C. § 924(a)(1)(A). On May 18, 2017, Clow received a below-Guidelines sentence of twenty-four months in prison with three years of supervised release. ECF Nos. 150, 157. Clow's sentence was affirmed on direct appeal. *United States v. Clow*, 722 F. App'x 720 (9th Cir. 2018).

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255). In determining

whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

## DISCUSSION

### I. Ineffective Assistance of Counsel

Clow claims that his trial counsel, Shaun McCrea, was ineffective for (1) failing to follow Clow's directions; (2) failing to seek or submit evidence or present defenses and arguments; (3) failing to properly investigate the case; (4) failing to object to "badgering and other misconduct by prosecution at trial,"; (5) delaying the trial for three years and/or failing to seek a further delay of trial; and (6) failing to object to the pace of trial, which was completed in three days rather than five.[1]

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*

---

[1] Clow presents eleven allegations of ineffective assistance, but many are duplicative and so are presented here in condensed form.

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

The Government has submitted a declaration from McCrea concerning her representation of Clow. McCrea Decl. ECF No. 169-1. McCrea describes her assessment of the Government's evidence against Clow, which she believed to be very strong, and her efforts to investigate possible defenses. The declaration describes considerable communication between Clow and McCrea by telephone, email, and in person. McCrea denies that she lied to Clow or failed to follow his directions, but explains that "in the scope of my representation I did appropriately exercise my discretion to refuse to do things Mr. Clow wanted that I felt were not appropriate or legally justified." *Id.*

Clow asserts that McCrea misled him concerning the prospect of acquittal, suggesting that the case was a "slam dunk" for the defense. These allegations are contradicted by copies of email communications between Clow and McCrea from January 2015. In the emails, McCrea tells Clow that "winning this case outright is going to require a miracle." McCrea Decl. Ex. 1. McCrea explained, in detail, the overwhelming evidence against Clow, the strong probability of an adverse verdict, and the steps she could and would take to try to mitigate that outcome. *Id.* McCrea offered to ask the Court to appoint another attorney to review the case and give Clow a second opinion. *Id.* In a second series of email communications from June 2015, McCrea told Clow "If you choose to proceed to trial despite my advice not to, I will do everything I can to zealously represent you and present an entrapment defense although as I have said time and time again, I believe a jury is going to find you guilty." McCrea Decl. Ex. 1.

In her declaration, McCrea explains that there were numerous obstacles to a speedy resolution of Clow's case. McCrea Decl. In the face of overwhelming Government evidence, Clow proposed numerous unlikely theories and defenses, which McCrea would investigate and ultimately disprove. One such theory, which appears multiple times in Clow's briefing for the

instant motion, concerned the confidential informant's work as a locksmith. Clow believed that felons were not permitted to work as locksmiths and so the confidential informant could not have been a felon. McCrea investigated this theory and discovered that there is no prohibition on felons working as locksmiths in the State of Oregon and that the confidential informant was, in fact, a felon. McCrea Decl. McCrea presented this information to Clow, "but he refused to believe it." *Id.*

> An additional obstacle was that when I provided Mr. Clow with information to meet and explain a contention he had raised (such as the CI couldn't be [a] felon and be a locksmith) Mr. Clow would then interpose a new issue in response to the government's evidence that would then require additional defense investigation, analysis, research and time. For example, Mr. Clow would give me contact information for witnesses but when the defense investigator contacted his witnesses, they did not report what Mr. Clow alleged they would say on his behalf. Then Mr. Clow would provide typed statements purportedly from these witnesses but when the defense tried to follow up on the information in the type written statements, the witness would not confirm the facts alleged in the type written statements.

McCrea Decl.

Another example, which is referenced in Clow's briefing, concerns Clow's mental state during the ATF investigation. Clow claimed that he was in a "diabetic rage" during at least some of the recorded incidents. McCrea Decl. McCrea did not believe that there was evidence of a disturbed mental state in the Government's recordings, but nevertheless McCrea reviewed Clow's medical and military records and sought a psychological examination to determine if there was evidence of a "diabetic rage," or any other psychological condition that would assist in Clow's defense or serve as mitigation. *Id.* McCrea found no such evidence and determined that "diabetic rage" was not a viable defense.

During the trial, McCrea presented an entrapment defense, arguing that Clow had been persuaded to sell the guns to the confidential informant and that ATF had targeted Clow in a

manner calculated to cause him to commit the crime. At the close of the case, the Court instructed the jury on entrapment. As noted, the jury was not persuaded and returned a guilty verdict on all counts.

On this record, considering especially the McCrea Declaration and the copies of contemporaneous communications between Clow and McCrea, the Court concludes that there is no support for Clow's allegation that McCrea misled him concerning his prospects for acquittal. On the contrary, McCrea expressed the view that conviction was a near-certainty in light of the Government's evidence and strongly urged Clow to accept a negotiated settlement.

With respect to the timing of the trial, Clow contends that he suffered from prejudice due to media coverage of mass shootings. Clow simultaneously argues that McCrea (1) unreasonably delayed the trial, which allowed more mass shooting events to occur, and (2) unreasonably failed to seek an addition delay due to a mass shooting that occurred only a few weeks before trial. Clow Ex. 1 ¶¶ 6, 12. As noted, the record indicates that the delay of trial was caused in large part by the need to investigate Clow's shifting theories concerning possible defenses. In any event, it would not have been reasonable for McCrea to base her trial preparations on the incidence of mass shootings, given the unpredictability of such events and the frequency with which they occur.

With respect to the alleged failure to follow directions, present certain evidence, object to questions from the Government, or offer particular arguments, the record shows that McCrea diligently investigated potential defenses and rejected those that were far-fetched, unlikely to succeed, or provably false. McCrea explained these decisions in her communications with Clow. These are precisely the sort of tactical and strategic decision that are protected under *Strickland*. *See Miles v. Ryan*, 713 F.3d 477, 470 (9th Cir. 2013) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]")

(internal quotation marks, alteration, and citation omitted). In addition, the Court cannot find that counsel rendered ineffective assistance based on a failure to advance meritless arguments. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) (so holding).

The Court had the opportunity to observe McCrea's performance during the suppression hearing and the trial in this case and has now had the opportunity to review some of McCrea's communications with Clow. McCrea was a diligent and zealous advocate for Clow and the Court cannot conclude that McCrea's performance fell below the standards expected of reasonable defense counsel. Accordingly, the Court need not reach the issue of prejudice. Clow's motion under § 2255 is DENIED with respect to ineffective assistance counsel.

## II. Challenge to the Sentence

Clow's second claim concerns his sentence, which he contends was "not in accordance with established court procedures and made with personal bias." Clow contends that the Court failed to consider that this was a first offense and did not consider Clow's age, medical condition, and history of public and military service. Clow also argues that the Court allowed a "punitive addition" to his sentence based on his threatening post-conviction confrontation with a Government witness.

"When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000). The Government correctly notes that Clow's arguments concerning his sentence were raised on direct appeal and rejected by the Ninth Circuit:

> The district court did not abuse its discretion in imposing Clow's sentence. Contrary to Clow's argument, the court took explicit account of Clow's history of service, and community and family ties. The court also acknowledged Clow's medical problems. It did not punish Clow's decision to go to trial, but rather

> reasonably treated Clow's decision to perjure himself at trial, in combination with his decision to threaten one of the government's witnesses, as aggravating factors. In light of the totality of the circumstances and 18 U.S.C. § 3553(a) sentencing factors, the below-Guidelines sentence is substantively reasonable.

*Clow*, 722 F. App'x 721 (internal citations omitted).

Clow cannot maintain a § 2255 action based on an issue has been fully litigated and resolved on direct appeal. The motion is therefore DENIED.

### III. Certificate of Appealability

A final order in a § 2255 proceeding may not be appealed unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court explained that a certificate of appealability under § 2253(c) is warranted when a habeas prisoner makes "a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 483-84 (internal quotation marks and citation omitted). In this case, the Court concludes that Clow has failed to make the required showing and so declines to issue a certificate of appealability.

## CONCLUSION

For the reasons set forth above, Defendant's Motion under 28 U.S.C. § 2255, ECF No. 163, is DENIED. No evidentiary hearing is necessary because the allegations in Defendant's motion, when viewed against the record, do not give rise to a claim for relief. The Court declines to issue a certificate of appealability.

It is so ORDERED and DATED this 17th day of October, 2019.

_____
ANN AIKEN
United States District Judge